Alexander POLLOCK and Mildred
Pollock, his wife, Plaintiffs,

v.

JOHNS–MANVILLE SALES
CORPORATION, etc., et al.,
Defendants.

Civ. A. No. 82–2692.

United States District Court,
D. New Jersey.

June 10, 1988.

Gavin & Gavin, by James C. Gavin, Haddonfield, N.J., for plaintiffs.

McCarter & English, by David A. Speziali, Newark, N.J., for Asbestos Claims Facility defendants.

Pitney, Hardin, Kipp & Szuch by Helen E. Hoens, Newark, N.J., for defendant Raymark.

Golden, Lintner, Rothschild, Spagnola & DiFazio by Charles D. Bodner, Somerville, N.J., for defendant Eagle–Picher.

## OPINION

WOLIN, District Judge.

### I. BACKGROUND [1]

Suffice it to say that this case is yet another in the myriad of ongoing asbestos litigation. In this action, plaintiff alleges that as a result of his exposure to asbestos and asbestos-containing products he is currently suffering from a disease which has manifested itself as a thickening of the lung tissue. Plaintiff, however, does not now suffer from any cancerous condition. Nevertheless, plaintiff seeks to present to the jury specific statistical evidence of his increased risk of developing cancer, and he is prepared to show, by way of expert testimony, that due to his exposure to asbestos he now has a 43 percent chance of developing cancer. Subsequently, defendants moved to exclude this issue of increased risk of cancer from trial.

1. This opinion supplements the transcript of the proceedings in this action dated May 25, 1988 and is now being published at the request of the attorneys.

490

## II. DISCUSSION

■ In addressing this issue, the Court must begin with the axiom that tort law does not compensate for mere speculative injury. Thus, in order to recover damages for a prospective injury such as the increased risk of developing cancer, plaintiff must establish proof of "reasonable medical probability." *Coll v. Sherry,* 29 N.J. 166, 179, 148 A.2d 481 (1959). For example, in *Lorenc v. Chemirad Corp.,* 37 N.J. 56, 179 A.2d 401 (1962), the Supreme Court of New Jersey allowed a plaintiff to offer expert medical testimony that as a result of spilling defendant's corrosive liquid on his hand, it was "medically probable" that a malignancy would develop. Furthermore, in *Evers v. Dollinger,* 95 N.J. 399, 471 A.2d 405 (1984), the New Jersey Supreme Court held that a plaintiff could present evidence of increased risk of cancer upon the actual *recurrence* of a malignancy—because at that point the risk has materialized as reality.

Clearly, the thrust of New Jersey tort law, as recently recognized by the State Supreme Court in *Ayers v. Jackson Township,* 106 N.J. 557, 598–599, 525 A.2d 287 (1987), is that a plaintiff may not recover for "unquantifiable future risks." Instead, a plaintiff must establish either: (1) medical probability, or (2) realization of the risk. To date, however, as noted by the Third Circuit in *Herber v. Johns–Manville Corp.,* 785 F.2d 79, 82 (3d Cir.1986), "the New Jersey Supreme Court has expressly reserved decision on the issue of whether increased risk, standing alone, is an actionable element of damage...." (quoting *Evers, supra* 95 N.J. at 412, n. 7, 471 A.2d 405).

Recognizing the complexity of the issue of awarding compensation on the basis of mere exposure to a toxic substance without proof as to the existence of a present injury, the New Jersey Supreme Court stated:

It may be that this dilemma could be mitigated by a legislative remedy that eases the burden of proving causation in toxic-tort cases where there has been a statistically significant incidence of disease among the exposed population. Other proposals for legislative intervention contemplate a funded source of compensation for persons significantly endangered by exposure to toxic chemicals. *We invite the Legislature's attention to this perplexing and serious problem.*

*Ayers v. Jackson Township,* 106 N.J. at 598, 525 A.2d 287 (emphasis added). It must also be emphasized, however, that the decision in *Ayers* was expressly limited to "plaintiff's cause of action for the *unquantified* enhanced risk of disease." Thus, the New Jersey Supreme Court concluded:

We need not and do not decide whether a claim based on enhanced risk of disease that is supported by testimony demonstrating that the onset of the disease is reasonably probable ... could be maintained under the [New Jersey] Tort Claims Act.

*Id.* (citing *Coll v. Sherry, supra*).

Plaintiff, in asserting the validity his increased risk claim, contends that this case is clearly distinguishable from *Ayers* because, unlike the unquantifiable claims with which the *Ayers* Court was presented, plaintiff is prepared to establish that his risk of cancer is: (1) caused by a diagnosed medical injury, and (2) definable medically and scientifically as having a 43 percent statistical probability of occurring in the future.

It is this ability to precisely quantify the statistical probability of occurrence upon which plaintiff rests his argument. Moreover, it is this application of mathematical precision which, asserts plaintiff, delivers his claim from the nebulus realm of speculation to the firm ground of reasonable certainty such that it may properly be presented to the jury. Notwithstanding the fact that the relevant probability to which plaintiff's expert will testify is less than 50 percent, this Court notes the recent decision in this district by the Honorable Judge Thompson in *Wolozen v. Johns–Manville,* Civil Action No. 80–1413 (slip op. March 21, 1988), in which the court stated at page nine of the transcript of its opinion:

As the Court notes in *Ayers,* it is the case of *Coll v. Sherry,* 29 N.J. 166 [148 A.2d 481] (1959) that sets forth the rea-

sonable probability standard. *Id.* [106 N.J.] at 592, 599 [525 A.2d 287]. The Court in *Coll* states that in order to recover, a plaintiff must show that 'the perspective consequences may, in reasonable probability, be expected to flow from the past harm ...' *Id.* [29 N.J.] at 175 [148 A.2d 481]. Neither in *Coll* nor in any subsequent cases discussing the enhanced risk of disease has the New Jersey Supreme Court or any other New Jersey court stated that a reasonable probability must be over 50 percent.

In so holding, the *Wolozen* court referred to a series of unpublished decisions from this district which were decided prior to *Ayers*. Curiously, however, the *Wolozen* opinion makes only a passing reference to the reported case of *Herber v. John–Manville, supra,* 785 F.2d 79. In *Herber,* the Third Circuit affirmed the district court's refusal to permit litigation on the increased risk of cancer element at trial because:

> Mr. Herber has proffered no expert opinion or other evidence that would permit a factual finding that he will more likely than not experience cancer in the future. The district court held that New Jersey law does not provide compensation for an increased risk of a future injury that remains a possibility rather than a probability.

785 F.2d at 91. Moreover, the Third Circuit went on to note that plaintiff's expert "had no epidemiological data showing a class risk in excess of 50 percent and was not prepared to offer an opinion that [plaintiff], more likely than not, would experience cancer." *Id.* at 91 n. 1.

It appears that Judge Thompson based her opinion in *Wolozen* on a strict interpretation of the phrase "medical probability." The *Wolozen* opinion apparently turns on the assumption that that which is quantifiable is, by definition, appropriate for consideration by a jury. This Court, however, does not agree that a close reading of *Ayers* yields the conclusion that the mere

transformation of an uncertain future event to a calculated mathematical probability automatically renders a claim amenable to decision by a jury.[2] Rather, as noted by the Court in *Ayers,* "the overwhelming weight of the scholarship on this issue favors a right of recovery for tortious conduct that causes a significantly enhanced risk of injury." 106 N.J. at 596, 525 A.2d 287. Furthermore, the *Ayers* Court acknowledged that other courts "have emphasized the requirement that proof of future injury [must] be reasonably certain." *Id.* at 595, 525 A.2d 287. The *Ayers* Court then cited a string of cases which, when summarized, appear to stand for the proposition that reasonable certainty is that which is more probable than not. Issues of the inherent reliability of statistics aside, a 43 percent risk factor, although tangible, is clearly not "more probable than not."

In what is undoubtedly the most recent interpretation of *Ayers v. Jackson Township,* the Appellate Division of New Jersey in *Mauro v. Owens–Corning Fiberglas Corp.,* 225 N.J.Super. 196, 542 A.2d 16 (1988),[3] the Honorable Judge Havey, writing for the court, stated:

> The focus in *Ayers* was on the inability to quantify the claim and the undue burden on the tort system such a claim would impose if recognized. Rejection of the claim would also, at least impliedly, be bottomed on the Court's embracement of the well-settled tort concept that damages are recoverable for prospective consequences of a tortious injury only if it is demonstrated that the apprehended consequences are reasonably probable.... In each case cited by *Ayers* where the enhanced risk of harm was recognized, recovery was conditioned upon a showing that the toxic exposure more probably than not will lead to cancer.

*Id.* at 203–04, 542 A.2d 20.

Although *Mauro,* much like *Ayers,* involved a situation in which the expert was unable to quantify the risk of cancer, the Appellate Division's reasoning that the "enhanced risk of cancer requires a showing of

2. In other words this Court finds that there exists a clear distinction between legal probability and mathematical probability.

3. As of the date of this opinion, *Mauro* has not yet been approved for publication by the Committee on Publications.

more likely than not" remains intact in this instance. Accordingly, even though plaintiff has been able to quantify the risk of cancer, because he is not able to show that such risk is more probable than not, this Court, must now preclude plaintiff from litigating the issue of increased risk of cancer.[4] Parenthetically, this Court adds that in light of the New Jersey Supreme Court's ruling in *Ayers*, and more specifically its invitation for legislative intervention, the present course of maintaining the *status quo* by disallowing plaintiff to litigate his claim on less than a "more probable than not" showing appears to be the same course which the New Jersey Supreme Court would currently choose.

### III. CONCLUSION

 This Court is cognizant of the extraordinary nature of asbestos-exposure litigation, both in terms of sheer volume of cases and the lessened substantive requirements needed to prove liability at trial. The employment of extraordinary case-management techniques is clearly warranted, provided that they equally serve the litigants, the Court, and the ends of justice. Accordingly, in order to best maintain the critical balance between asbestos-exposure litigants, this Court will follow the precedent established in *Devlin v. Johns–Manville*, 202 N.J.Super. 556, 495 A.2d 495 (Law Div.1985), as adopted by *Mauro v. Owens–Corning, supra.* Thus, notwithstanding the present denial of plaintiffs enhanced risk claim this Court recognizes plaintiff's "right to sue in the future should the increased risk created by the exposure to asbestos come to fruition." 225 N.J.Super. at 204–05, 542 A.2d 20 (quoting *Devlin, supra,* 202 N.J.Super. at 565, 495 A.2d 495.[5]

In other words:

---

**4.** It is further significant, as noted in *Devlin v. Johns–Manville Corp.,* 202 N.J.Super. 556, 495 A.2d 495 (Law Div.1985), that the disease from which plaintiff alleges he now suffers (*i.e.,* pleural thickening) is a separate and a distinct disease process from that of cancer.

**5.** Although not perfect, this Court finds that this approach best ameliorates the following "Catch 22" highlighted in *Devlin*:

[N]either the statute of limitations nor the single controversy rule shall bar toxic-tort claims instituted after a later discovery of a disease or injury caused by defendant's conduct, even if there has been prior litigation between the parties based on the same tortious conduct.

*Mauro,* 225 N.J.Super. at 202, 542 A.2d 19 (citing *Ayers, supra,* 106 N.J. at 584, 525 A.2d 287). This approach is a fair and sensible accommodation to the litigant whose risk of cancer claim does not meet the standard of "more likely than not," (*i.e.,* not presently cognizable at law) since it provides the litigant his or her day in court if and when the disease or injury is actually suffered.

As a result of this opinion, plaintiff will not be able to submit testimony as to the increased risk of cancer, but as indicated in *Mauro,* 225 N.J.Super. at 206–07, 542 A.2d 21–22, statistics that are relevant as to fear of cancer are permissible provided that they were given in discovery.

■

1. A plaintiff who fails to sue within two years after he is diagnosed with asbestosis but later sues when a malignancy develops is barred by reason of the statute of limitations. 2. Alternatively, a plaintiff who sues within two years after asbestosis is diagnosed and cannot prove that future malignancy is probable cannot later sue if a malignancy develops because such suit is barred by the entire controversy doctrine. 202 N.J.Super. at 568, 495 A.2d 495.