**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1641-18T1

HAJEEMA EDMAN-SUTTON,

    Plaintiff-Respondent,

v.

CITY OF NEWARK, NEWARK
FIRE DEPARTMENT, and
JIHAAD A. NORTH,

    Defendants-Appellants.

_____

Submitted December 2, 2019 – Decided February 13, 2020

Before Judges Messano and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-8870-15.

Kenyatta K. Stewart, Corporation Counsel, City of Newark, Department of Law, attorney for appellants (Steven Francis Olivo, Assistant Corporation Counsel, of counsel and on the briefs).

The Reinartz Law Firm, LLC, attorneys for respondent (Richard A. Reinartz, of counsel and on the brief).

PER CURIAM

A jury found that plaintiff Hajeema Edman-Sutton suffered a permanent loss of a bodily function, see N.J.S.A. 39:6A-8(a), as the result of a motor vehicle accident on April 23, 2015. The jury also found plaintiff was not negligent, and the accident was caused by the negligence of defendant, Jihaad North, an employee of the Newark Fire Department (collectively, defendants).[1] The jury awarded plaintiff $400,000 in damages for pain, suffering, impairment, and loss of enjoyment of life. Defendants moved for a new trial or, alternatively, remittitur. The judge denied the motion and this appeal followed.

Defendants contend the judge's decision to permit plaintiff's late amendments to interrogatories, while at the same time denying their late service of a supplemental expert's report and restricting their expert's trial testimony, was highly prejudicial and requires reversal. They also argue the judge should have granted a new trial on damages because plaintiff testified about her tuition expenses, even though the judge previously ruled her claim was limited to non-economic damages, or alternatively, the judge should have remitted the grossly excessive verdict.

---

[1] The City of Newark (the City) is the actual defendant and was improperly pled as the Newark Fire Department.

We have considered these arguments in light of the record and applicable legal standards. We reverse and remand for a new trial.

I.

Discovery ended on June 2, 2017, after which the case was arbitrated pursuant to Rule 4:21A, with a net award to plaintiff of $67,500. It appears the City rejected the award and requested a trial de novo. Ibid. Plaintiff continued medical treatment for injuries to her spine and filed amendments to interrogatory answers on July 26, 31, August 3, and 10, 2017. These included reports from physicians who administered two epidural injections to plaintiff's spine in November 2016 and April 2017, recommendations from Dr. Bryan Massoud that plaintiff undergo a lumbar discectomy, and a July 2017 MRI report documenting a lumber disc herniation. On each occasion, the reports were accompanied by plaintiff's counsel form cover letter that said, "[i]f the information . . . is produced after an applicable . . . discovery end date . . . it was not reasonably available by the exercise of due diligence prior to that date."

This procedure did not comply with Rule 4:17-7, which requires that amendments to interrogatory answers served later than twenty days before the discovery end date (DED) be accompanied by a certification "that the information requiring the amendment was not reasonably available or

A-1641-18T1

discoverable by the exercise of due diligence prior to the [DED]." The assertions in counsel's letters were not certified.

Defendants moved to bar these late amendments; plaintiff filed opposition and cross-moved to extend discovery. The judge entered two orders on September 1, 2017. The first denied defendants' motion because "[t]he information contained in the amendment[s] was not reasonably discoverable in the exercise of due diligence prior to the expiration of the June 2, 2017 DED." The second extended discovery, which in turn the civil division presiding judge further extended to January 29, 2018.

During discovery, defendants supplied two expert reports authored by Dr. Steven G. Robbins, dated December 19, 2016, and May 19, 2017, i.e., before plaintiff filed the four amendatory interrogatory responses. In his first report, Dr. Robbins opined that plaintiff "may have sustained temporary soft tissue injuries" from the accident, but they "have not led to permanency." The second report included Dr. Robbins's comments having now reviewed various diagnostic films and test results. Citing an emergency room visit and tests done on plaintiff in 2012, after a prior motor vehicle accident, he opined that plaintiff may have "sustained prior trauma which required an emergency room evaluation and imaging studies." However, since plaintiff had not disclosed any prior

treatment during his examination of her, Dr. Robbins withheld any further opinions pending a complete review of all medical records.

With trial set for September 17, 2018, on September 5, plaintiff filed a motion in limine seeking, among other things, to bar defendants from introducing any evidence of the 2012 accident, and to further prohibit Dr. Robbins from testifying about the two epidural injections, the July 2017 MRI, and plaintiff's treatment with Dr. Massoud, including the recommendation for surgery, because neither of his two reports addressed those issues. On September 14, 2018, defendants served a third report from Dr. Robbins. That report contained Dr. Robbins's review of additional medical records supplied in the amendatory answers. Essentially, Dr. Robbins critiqued the diagnostic findings, concluding "there [were] discrepancies in the submitted medical records and nonanatomic features discussed on physical exam." Dr. Robbins did not review the July 2017 MRI "study," only the radiologist's report, and pending his ability to view the film alongside earlier MRIs, Dr. Robbins "refer[red] [defense counsel] back to [his] prior report."

The judge heard oral argument on the motion on September 18, 2018. Defense counsel admitted that he failed to provide Dr. Robbins with plaintiff's amendatory reports in a timely fashion, which caused the extraordinary delay in

producing the third report. Finding "substantial prejudice to . . . plaintiff[,]" the judge not only barred any reference to the third report but also prohibited Dr. Robbins from commenting on the July 2017 MRI, the two epidural injections, and the recommendation for surgery, all contained in plaintiff's late amendments. Noting defense counsel's position that Dr. Robbins should be permitted to rebut the opinions offered by plaintiff's trial expert, Dr. Andrew Carollo, in his videotaped testimony, the judge held:

> Now insofar as [Dr. Robbins's] comments upon things that were concluded or testified to at the de bene esse, he can do that but not commenting on these, on these. So insofar as the doctor disagrees with . . . for the reasons set forth in his reports, in his previous reports and things that flow from that, he's certainly permitted to testify. But just not these things.

The judge also granted plaintiff's in limine motion and barred defendants from introducing any evidence of plaintiff's 2012 automobile accident.[2]

The jury saw Dr. Carollo's videotaped deposition testimony. Dr. Carollo was not plaintiff's treating doctor but, based upon his clinical examination and

---

[2] The court's September 20, 2018 order regarding the ruling on the motion in limine was not filed until October 22. For reasons unexplained by the record, although the proposed order specifically listed the four items that Robbins was prohibited from discussing, the court struck out the reference to the July 2017 MRI. It may be that the judge struck this from the order because Dr. Robbins's third report clearly said he had only seen the radiologist's report, not the actual MRI study.

A-1641-18T1

review of her medical records, he concluded plaintiff suffered a number of injuries in the accident, including two disc herniations with nerve root radiculopathy. He identified the July 2017 MRI films, opined that they "correlate[d]" with earlier studies from 2015, and concluded, "[i]f the situation . . . progresses, neurologically, then [plaintiff is] going to have to have surgery." Dr. Carollo explained that plaintiff underwent two epidural injections in November 2016 and April 2017, but they only provided "temporary relief." He acknowledged that they "did [not] solve her problem." Dr. Carollo opined that plaintiff suffered "a permanent loss of a bodily function with regard to [her] neck and lower back."

Before Dr. Robbins testified, the judge asked defense counsel if he had discussed the court's prior rulings with the witness. Defense counsel indicated that he had. However, after Dr. Robbins alluded to plaintiff having undergone x-rays in 2012, the judge excused the jurors and addressed counsel with the witness present. The judge expressed his concern that Dr. Robbins's testimony about these x-rays suggested plaintiff had prior injuries, and that implication "fl[ew] in the face of [his] ruling." Plaintiff's counsel reiterated his understanding that Dr. Robbins could not testify about the four items excluded by the judge's prior ruling. The judge said that was correct, and directing his

7

comments to the doctor, said, "[a]ny of the other things that you reviewed afterward, we don't want you to discuss."

Then somewhat confusingly, the judge said, in fairness to defendants, he would permit the doctor to compare earlier studies and later studies, apparently the studies from 2012 and 2015. He explained this would permit defendants to pursue their central argument: "[plaintiff] had this accident; whatever injuries she has on her spine couldn't have been caused by it, because the other image is exactly the same. . . . [T]hat's what I ruled so that those issues could come out in fairness." When the jury returned, defense counsel only asked Dr. Robbins about the studies referenced in his first two reports, displaying for the jury MRIs from 2015, and his opinion that plaintiff had not suffered a permanent injury.

In relatively brief cross-examination, Dr. Robbins acknowledged that those 2015 MRI studies were "poorly formatted." Dr. Robbins acknowledged those studies showed disc protrusions, but he reiterated his opinion that plaintiff had not suffered a permanent injury.

Plaintiff's counsel gave his closing statement after defense counsel. Discussing Dr. Robbins's testimony, counsel told the jury:

> Guess what. He didn't review the records of Dr. Massoud that were generated over six months after [Dr. Robbins's] examination of [plaintiff]. So[,] he never reviewed the recommendation for surgery by Dr.

Massoud. He never reviewed the July 2017 MRI of [plaintiff's] lumbar spine. He never reviewed the report of the cervical or lumbar epidural injection, and yet Dr. Robbins is up here selling this case to you on behalf of the defendants. He's up here showing you MRI slides that he said in his report were of poor quality and not properly formatted, and he's selling it to you.

Counsel continued that Dr. Robbins "didn't review all these other records, and he's showing you films that are of poor quality[.]" There was no objection to counsel's statements, most of which were blatantly false.[3]

In Point I of their brief, defendants present a two-fold argument. First, they contend the judge abused his discretion by permitting plaintiff's late amendments to interrogatories. That argument lacks sufficient merit to warrant extensive discussion. R. 2:11-3(e)(1)(E). We add only the following.

"As it relates to extensions of time for discovery, appellate courts . . . have . . . generally applied a deferential standard in reviewing the decisions of trial courts." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011) (citations omitted). We will intervene only for "an abuse of discretion or a judge's misunderstanding or misapplication of the law." Capital Health Sys.,

---

[3] As noted above in footnote 1, in his third, excluded report, Dr. Robbins commented only on the radiology report of the July 2017 MRI and asked to review the actual study. The report, however, noted a "serious discrepancy" between the radiology report and other findings, including "electrodiagnostic testing" performed on plaintiff.

Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79–80 (2017) (citing Pomerantz Paper, 207 N.J. at 371).

Here, plaintiff continued her medical treatment after the close of discovery. Although plaintiff's counsel failed to comply with Rule 4:17-7, we cannot quarrel with the judge's conclusion that the medical reports in the amendatory answers were "not reasonably available or discoverable by the exercise of due diligence prior to the discovery end date." Ibid. Further, discovery was extended four additional months after the denial of defendants' motion to bar the amendments, thereby alleviating any prejudice that otherwise could have resulted.

The second aspect of defendants' argument, however, has merit. It was certainly within the judge's discretion to bar Dr. Robbins's September 2018 report. It was served well beyond the close of discovery and only in response to plaintiff's in limine motion. See, e.g., Bender v. Adelson, 187 N.J. 411, 428 (2006) (quoting R. 4:17-7; R. 4:24-1(c)) (affirming trial judge's decision to bar three defense experts from testifying after first being produced after discovery deadline because defendants failed to demonstrate "due diligence" or "exceptional circumstances"). However, in barring Dr. Robbins from referring in any way to the July 2017 MRI, the two epidural injections, and Dr. Massoud's

report and recommendation for surgery, the judge misapplied applicable law. That, in conjunction with plaintiff's counsel's grossly improper summation comments, compels reversal.

Plaintiff justified the additional relief of barring any mention of the information in her interrogatory amendments by arguing the well-worn cliché that "[a]n expert's testimony at trial may be confined to the matters of opinion contained within the expert's report." Mauro v. Owens-Corning Fiberglas Corp., 225 N.J. Super. 196, 206 (App. Div. 1988) (citing McCalla v. Harnischfeger Corp., 215 N.J. Super. 160, 171 (App. Div. 1987); Maurio v. Mereck Constr. Co., 162 N.J. Super. 566, 569 (App. Div. 1978)). In short, since Dr. Robbins never referred to the four specific items in his first two reports, and his third, late report was properly barred, plaintiff convinced the judge not to permit any testimony at all about the medical information furnished in the late amendments. However, "in deciding the appropriate sanction for a breach of discovery rules, the sanction must be just and reasonable." Ibid. (citing Brown v. Mortimer, 100 N.J. Super. 395, 401 (App. Div. 1968)).

N.J.R.E. 703 provides: "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing." The rule

11

> mandates that expert opinion be grounded in "facts or data derived from (1) the expert's personal observations, or (2) <u>evidence admitted at the trial</u>, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts."
>
> [<u>Townsend v. Pierre</u>, 221 N.J. 36, 53 (2015) (emphasis added) (quoting <u>Polzo v. County of Essex</u>, 196 N.J. 569, 583 (2008)).]

As a result, "authorization for an expert to base his opinion on what he learns at trial can sometimes excuse his failure to submit a report in advance thereof and may likewise justify permitting him to testify beyond the four corners of his report[,] if he has submitted one." Biunno, Weissbard & Zegas, <u>Current N.J. Rules of Evidence</u>, cmt. 6 on <u>N.J.R.E.</u> 703 (2019) (citing <u>State v. Labrutto</u>, 114 N.J. 187, 205–06 (1989); <u>Amaru v. Stratton</u>, 209 N.J. Super. 1, 11–12 (App. Div. 1985)). Writing for our court in <u>Amaru</u>, Judge Michels stated the proposition succinctly: "that an expert's testimony exceeds the scope of written reports requested in discovery does not automatically bar that testimony from trial." 209 N.J. Super. at 12. Viewed differently, had Dr. Robbins been in the courtroom while Dr. Carollo's videotaped testimony was admitted in evidence, there would be no basis whatsoever to prohibit the doctor from criticizing plaintiff's expert's opinions, including the importance he attached to the four barred items.

We disagree with the trial judge's conclusion that plaintiff would be prejudiced if Dr. Robbins were permitted to comment on the four items. The content of the doctor's third report demonstrated no departures from the opinions and comments in the first two reports. Plaintiff had the sole burden of proof in the trial as to whether she suffered a permanent injury in the accident, and, if so, what amount of damages would reasonably compensate her for her pain and suffering. But, plaintiff had no reasonable expectation that Dr. Carollo's opinions, based in part upon a full examination of her medical records, were immune from criticism simply because Dr. Robbins never commented about some of those records previously in a report.

Perhaps the judge's discovery/evidentiary ruling standing alone might not compel reversal, but we consider it in conjunction with plaintiff's counsel's improper summation comments. The Court has not hesitated to review such comments under the plain error standard. See, e.g., Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81, 128 (2008) (citing Fertile v. Saint Michael's Med. Ctr., 169 N.J. 481, 493 (2001)). In this case, in combination with the court's ruling, counsel's summation was "clearly capable of producing an unjust result[.]" R. 2:10-2.

Obviously, counsel is afforded broad latitude in closing arguments. Bender, 187 N.J. at 431. They may not, however, "misstate the evidence nor distort the factual picture." Ibid. (quoting Colucci v. Oppenheim, 326 N.J. Super. 166, 177 (App. Div. 1999)). Bender provides remarkably similar facts.

As already noted, in Bender, the trial court granted the plaintiff's motion to bar as untimely the names and reports of three defense experts. Id. at 419–20. During summation, the plaintiff's counsel asked the jury to draw an adverse inference from the defendant's failure to present such independent experts, asking the jurors: "[W]here are the outside objective, independent experts . . . for the defense?" Id. at 421. The trial court granted the defendant's motion for a mistrial, finding that the "cumulative effect" of the plaintiff's counsel's summation comments was "clearly capable of producing an unjust result." Id. at 423. We reversed the trial court's decision, finding that the comments were, strictly speaking, accurate, and finding it "determinative that defendants created this situation by their own delay." Id. at 424.

The Court reversed our judgment and affirmed the trial court's decision, finding that the summation comment was "so prejudicial" that it could mislead the jury and result in a "'miscarriage of justice,' warranting a new trial." Id. at 435. The Court found it crucial that the plaintiff's counsel "knew . . . defendants

had . . . [experts] who were precluded from testifying for procedural reasons, namely plaintiff's own motion[,]" and also "knew that the jury was unaware of that procedural bar[.]" Id. at 433. The Court found "the summation comment ultimately played on that ignorance and implied an untruth." Ibid.

Here, plaintiff's counsel's summation not only "implied an untruth"; it contained statements that were actually untrue. Counsel told the jury Dr. Robbins "didn't review the records of Dr. Massoud that were generated over six months after [Dr. Robbins's] examination of [plaintiff,]" and "he never reviewed the recommendation for surgery[,]" even though Dr. Robbins's barred report specifically mentions his review of Dr. Massoud's report and surgical recommendation. Counsel told the jury Dr. Robbins "never reviewed the report of the cervical or lumbar epidural injection," when he knew that Dr. Robbins's report, which the judge barred as a result of plaintiff's motion in limine, specifically discussed the injections. While he truthfully told the jury that Dr. Robbins never reviewed the July 2017 MRI, because of plaintiff's motion, the jurors never knew that Dr. Robbins had indeed reviewed the radiologist's report of that MRI and found a "serious discrepancy" between that and other diagnostic test findings.

These summation comments, when taken together with the judge's erroneous discovery/evidentiary ruling, compel reversal.

II.

For the sake of completeness, we address defendants' other arguments.

Plaintiff testified she was employed as a physician's assistant, and the following exchange took place during direct examination:

> Q. To become a physician assistant, is there any type of educational requirement?
>
> A. Yes, it's a[n] extensive educational requirement actually. I actually got accepted to into the 3+3 program with Rutgers and Kean University, and that was a total of about almost [seven] years. . . . It's very expensive as well.
>
> Q. And what year did you -- you completed that program?
>
> A. I did complete that program.
>
> Q. In what year?
>
> A. In 2016, I completed it in May.
>
> Q. Okay. And how did you pay for that?
>
> A. Well, I took out almost -- now after all the interest rates, almost $300,000 in loans.
>
> Q. Okay. And you completed the program and you're now working, yeah?

16

A.     I completed the program, but I -- initially, I was not working for long periods of time, and then I got a job, had to -- actually kind of got fired from the job because I couldn't complete the requirements at that job, and then I was out of a job again while my loans increased with interest rates, and then finally I got a little desperate, so I moved over a hundred miles away from my family just so I could take another job.

There was no objection by defense counsel to any of this testimony.

During deliberations, the jury posed a question: "How long was the plaintiff out of work?"  Defendants requested "a limiting instruction that there is no lost wage claim[.]"  The judge answered the jury's question by giving the following instruction:

In this case the plaintiff claims for damages consists of damages for pain, suffering, disability, impairment[,] and the loss of enjoyment of life.  There are no claims for lost wages, past or future loss of earnings, or medical expenses.  Testimony related to her inability to perform at her job or to attain certain educational accomplishments, were admitted for your consideration on the issue of her claims for pain and suffering, disability, impairment[,] and the loss of enjoyment of life as I've defined that to you in my charge and as I discussed in my charge the things for you to consider in evaluating a claim for these damages.

Defense counsel said the instruction was "acceptable."  In his general charge, the judge only provided instructions for consideration of noneconomic damages caused by the accident and not for economic damages.

17

In Points II and III of their brief, defendants argue the judge should have granted a new trial on damages because of plaintiff's testimony "regarding economic damages," or alternatively, the judge should have granted a remittitur because the damage award of $400,000 was excessive.

We review the trial court's decision on a motion for a new trial under the same standard governing the trial judge — whether "it clearly and convincingly appears that there was a miscarriage of justice under the law." Hayes v. Delamotte, 231 N.J. 373, 386 (2018) (quoting R. 4:49-1(a)). "[W]hen evaluating the decision to grant or deny a new trial, 'an appellate court must give "due deference" to the trial court's "feel of the case."'" Ibid. (quoting Risko v. Thompson Muller Auto. Grp., 206 N.J. 506, 522 (2011)). After reviewing the record, we find nothing objectionable about plaintiff's testimony, and the court's answer to the jury's question adequately focused deliberations upon the limited nature of the claimed damages.

We need not address the issue of the excessiveness of the jury's verdict, given our instructions as to the proper scope any retrial. We see no reason to retry issues of liability for the accident, since the court's erroneous ruling limiting Dr. Robbins's testimony and plaintiff's counsel's improper summation comments did not touch on that issue. However, the errors that require reversal

affected both the jury's consideration of whether the accident was a proximate cause of plaintiff's permanent loss of a bodily function under N.J.S.A. 39:6A-8(a), and, if so, the quantum of non-economic damages proximately caused by those injuries. If tried again, both of those issues should be considered anew.

Reversed and remanded for a new trial.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1641-18T1