ROGER MAURO AND LOIS MAURO, HIS WIFE, PLAINTIFFS-APPELLANTS, v. RAYMARK INDUSTRIES, INC., CELOTEX CORPORATION, GAF CORPORATION, SOUTHERN TEXTILE CORPORATION, PACOR, INC., OWENS-ILLINOIS GLASS COMPANY, H.K. PORTER COMPANY, INC., GARLOCK, INC., CERTAINTEED PRODUCTS CORPORATION, FIBREBOARD CORPORATION, AND JOHN DOE, DEFENDANTS, AND OWENS-CORNING FIBERGLAS CORPORATION, PITTSBURGH CORNING CORPORATION, EAGLE-PICHER INDUSTRIES, INC., AND KEENE CORPORATION, DEFENDANTS-RESPONDENTS.

Argued February 15, 1989—Decided August 1, 1989.

*Gene Locks* argued the cause for appellants (*Greitzer and Locks,* attorneys; *Gene Locks, James J. Pettit, Karl N. McConnell,* and *Jonathan W. Miller,* on the briefs).

*Gita F. Rothschild* argued the cause for respondents (*McCarter & English,* attorneys).

*Wendy L. Mager* submitted a brief on behalf of *amicus curiae,* American Insurance Association (*Smith, Stratton, Wise, Heher & Brennan,* attorneys).

The opinion of the Court was delivered by

STEIN, J.

In *Ayers v. Jackson Township,* 106 *N.J.* 557 (1987), we declined to recognize a cause of action under the New Jersey Tort Claims Act, *N.J.S.A.* 59:1–1 to 12–3, to recover damages for an unquantified enhanced risk of disease resulting from exposure to toxic chemicals. We are now asked to consider whether a claim for enhanced risk of disease is cognizable in a case involving personal injury claims against *private*-entity defendants asserted by a plaintiff with present injuries attributed to asbestos exposure. The plaintiff's expert testified that there was a "high probability" that plaintiff had *an increased risk* of contracting cancer during his lifetime. The expert was unable to testify that it was *probable* that plaintiff would *contract* cancer, and evidence of statistical studies offered to show a correlation between asbestos-related disease and cancer was excluded. Thus, there is no evidence in the record of the likelihood that plaintiff will contract cancer. The trial court withdrew from the jury's consideration plaintiff's claim for damages based on his enhanced risk of cancer. In a reported opinion, *Mauro v. Owens–Corning Fiberglas Corp.,* 225 *N.J. Super.* 196 (1988), the Appellate Division affirmed both the trial court's exclusion of the statistical evidence correlating asbestos disease with cancer and the trial court's rejection of the enhanced-risk claim. We granted certification, 113 *N.J.* 341 (1988), and now affirm.

I.

Plaintiffs, Roger Mauro (hereinafter plaintiff) and Lois Mauro, his wife, instituted this action against several manufacturers of asbestos products based on injuries allegedly sustained

as a result of inhalation of asbestos fibers in the course of Mauro's employment at Ancora State Psychiatric Hospital. Mauro testified that he was employed as a repairman and later as a plumber-steamfitter. From 1964 until the mid-to-late 1970s he used or was exposed to materials containing asbestos manufactured by defendants, including pipe covering and asbestos cement. The exposure occurred when he was ripping out old insulation material and installing new insulation. He testified that defendants' products contained no warnings.

In 1981 plaintiff and his co-workers participated in tests conducted by the New Jersey Department of Health to determine the prevalence of asbestos-related disease among plumbers and steamfitters in state institutions. Plaintiff was informed by Dr. Peter Gann, the department's Chief of Occupational Medicine, that although the results of his physical examination and lung function test were "normal," he had bilateral thickening of both chest walls and calcification of the diaphragm. Dr. Gann's letter informing plaintiff of his condition stated: "[Y]our exposure to asbestos has been significant and there is some evidence that this exposure may increase the risk of development of lung cancer."

Mauro testified that when informed of his condition, he became "very angry, very upset." He feared contracting cancer because his mother and a prior employer had died of the disease. He subsequently consulted a pulmonary specialist, by whom he has been examined every six months since 1982. Mauro has also had annual chest x-rays. He testified that the reason for his medical surveillance is "to find out if I'm going to get cancer and when I'm going to get it."

Plaintiff's primary expert witness was Dr. James Guidice, a pulmonary specialist who examined plaintiff in 1986. He explained the difference between the lining of the lung, the "pleura," and the "parenchyma," which is the spongy material inside the lung. Dr. Guidice diagnosed plaintiff's condition as

"pleural asbestosis," [1] based on x-ray examination that revealed scarring of the lung lining, pleural plaque formation, and left diaphragmatic calcification.

Dr. Guidice testified that asbestos exposure can cause cancer, and identified four major areas of the body in which asbestos-related cancer is likely to occur: the lungs, the lining around the lungs, the larynx, and the entire gastrointestinal tract. He testified that because of Mauro's asbestos exposure, "the risk of cancer, specifically asbestos-related cancers, is a major concern." Dr. Guidice acknowledged that he did not testify that it was probable that Mauro would contract cancer: "There's a risk. * * * I certainly can't predict he's going to get cancer. All I can say is there's a high probability he's at risk because he's a young man and therefore he's at increased risk * * * for developing cancer."

Dr. Guidice also testified about Mauro's need for medical surveillance "one to two to four times a year depending upon the individual problems," which he said could continue during Mauro's lifetime. He also gave testimony about the estimated costs of x-rays, breathing examinations, and office visits that were components of the required medical surveillance.

In the course of the defendants' *voir dire* examination concerning Dr. Guidice's qualifications and the scope of his expert testimony, plaintiff's counsel sought clarification from the trial court on whether Dr. Guidice would be permitted to testify about statistical and epidemological studies indicating that between twenty percent and forty-three percent of those afflicted with asbestos-related disease eventually die of cancer. Defense counsel argued that such testimony was improper because the

---

[1]Defendants contended that Dr. Guidice's use of the term "pleural asbestosis" was inaccurate, maintaining that asbestosis is characterized by scarring of the lung parenchyma, not by scarring of the pleura. *But see* I. Selikoff & D. Lee, *Asbestos and Disease* 189–206 (1978) (Discussion of characteristics and etiology of pleural asbestosis, described as changes in pleura and pleural cavity resulting from inhalation of asbestos dust).

statistical studies were not referred to during discovery or in Dr. Guidice's expert report. The relevant portion of that report was characterized as being limited to an opinion that Mauro was at increased risk for "the following asbestos-related diseases: bronchogenic carcinoma; malignant mesothelioma; laryngeal carcinoma; and gastrointestinal carcinoma." The trial court ruled that in view of their omission from his report, Dr. Guidice would be precluded from giving testimony based on such statistical and epidemiological studies.

In its charge to the jury at the conclusion of the trial, the trial court rejected Mauro's claim for enhanced risk of developing cancer. The court explained:

There's no testimony that the Plaintiff Roger has cancer or that he likely will get cancer. In New Jersey damages may not be awarded for any future injury which is merely possible but not probable.

The reason for this rule is simple. In this state, if the Plaintiff were to get cancer sometime in the future and claim same to have been due to an alleged asbestos exposure, at that point he could file a new lawsuit seeking damages for that cancer.

Accordingly, even if you conclude that the plaintiff has an enhanced risk of developing cancer, you may not award any damages for that risk.

However, the court permitted the jury to consider Mauro's claim for damages caused by emotional distress relating to his fear of developing cancer, provided the jury found that Mauro sustained an asbestos-related injury. The court also permitted the jury to consider Mauro's claim for damages caused by his present medical condition, as well as the cost of future medical surveillance.

The jury returned a verdict of $7,500 in favor of plaintiff Roger Mauro and against defendants Owens–Corning, Pittsburgh Corning, and Eagle–Picher Industries. Defendant Keene Corporation was found not liable on all counts. The jury found against Lois Mauro on her claim for loss of companionship and consortium.

The Appellate Division affirmed. *Mauro v. Owens–Corning Fiberglas Corp., supra,* 225 *N.J.Super.* 196. The court held that under *Ayers v. Jackson Township, supra,* 106 *N.J.* 557,

unless plaintiff could prove to a reasonable degree of medical certainty that cancer was more probable than not, his claim for increased risk of cancer could not be sustained. *Mauro,* 225 *N.J.Super.* at 203–04. *Ayers* was therefore not distinguishable on the ground that it was decided within the framework of the Tort Claims Act or that Mauro, unlike the plaintiffs in *Ayers,* had sustained a present injury. The Appellate Division also found that Dr. Guidice's testimony regarding the statistical data was properly excluded because it had not been furnished to defendants during discovery. 225 *N.J.Super.* at 206.

## II.

■ To set a context for our consideration of the enhanced-risk question posed by this record, we restate the inquiry we posed in *Ayers* as a preface to our analysis of the issues in that litigation:

> Our evaluation of the enhanced risk * * * claim[ ] requires that we focus on a critical issue in the management of toxic tort litigation: at what stage in the evolution of a toxic injury should tort law intercede by requiring the responsible party to pay damages? [106 *N.J.* at 579.]

It is important to recognize at the outset that the rule of law advocated by plaintiffs, *i.e.,* that tort victims should have a present cause of action for a significant but unquantified enhanced risk of future injury, represents a significant departure from traditional, prevailing legal principles. The general rule is that set forth in the Restatement:

> When an injured person seeks to recover for harms that may result in the future, he is entitled to damages based upon the probability that harm of one sort or another will ensue and upon its probable seriousness if it should ensue. When a person has suffered physical harm that is more or less permanent in nature * * * he is entitled to recover damages not only for harm already suffered, but also for that which probably will result in the future. [*Restatement (Second) of Torts* § 912 comment e (1979).]

*See also* 3 *Personal Injury: Actions, Defenses and Damages* § 3.03 (L. Frumer & M. Friedman ed. 1984) ("Plaintiff is entitled to recover damages for those losses which are reasonably certain to occur in the future * * *. Like any other future loss, the permanent nature of the injury must be proved to a degree

of reasonable certainty, or probability."); 1 *Damages in Tort Actions* § 1.22 (M. Minzer ed. 1989) ("[S]pecial damages must be proven to a reasonable certainty and those special damages claimed but insufficiently proved so as to be too remote may not be recovered."); King, *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences*, 90 *Yale L.J.* 1353, 1374–75 (1981) ("In considering the proof of damages in general, * * * many recent tort cases either equate 'reasonable certainty' with the traditional more-likely-than-not standard of proof, use a reasonably probable standard, or at least reject the actual certainty standard."); 22 *Am.Jur.* 2d *Damages* § 677 (1988) ("Plaintiffs who have submitted proof of prospective damages to a reasonable degree of certainty are entitled to submit the question to the jury * * *.); 25 *C.J.S. Damages* § 31 (1966) ("[N]o recovery can be allowed for the mere possibility of future consequences of an injury inflicted by a wrongdoer; in order for suggested future results to be includible as an element of damage, it must appear that they are reasonably certain or reasonably probable to follow."); Annotation, *Future Pain and Suffering as Element of Damages for Physical Injury*, 81 *A.L.R.* 423, 424 (1932) ("It is well settled that in an action for a personal injury, future pain and suffering on the part of the injured person in consequence of the injury constitute a proper element of the damages which may be allowed, provided there is the requisite certainty or probability that such pain and suffering will result.").

The long-standing rule in New Jersey is that prospective damages are not recoverable unless they are reasonably probable to occur. *Coll v. Sherry*, 29 *N.J.* 166, 174–75 (1959). The rationale for adopting this standard was explained by Justice Francis, then sitting in the Appellate Division, in *Budden v. Goldstein*, 43 *N.J.Super.* 340, 346–47 (1957):

> In the admeasurement of damages, it is well known that no recovery can be allowed for *possible* future consequences of an injury inflicted by a wrongdoer. In order for suggested future results to be includible as an element of damage,

it must appear that they are reasonably certain or reasonably probable to follow.

* * * [M]any of the authorities throughout the country use the expression "reasonably certain" or "reasonable certainty" as the test and consider "reasonably probable" or "reasonable probability" inadequate and erroneous; others accept the latter statement. Our cases do not seem to have dealt specifically with the question of whether the two have the same significance in relation to *quantum* of proof, and so may be used interchangeably. It seems to us that in a resolution of the conflicting interests involved, reasonable probability is the just yardstick to be applied. Basically, our view comes down to this: a consequence of an injury which is possible, which may possibly ensue, is a risk which the injured person must bear because the law cannot be administered so as to do reasonably efficient justice if conjecture and speculation are to be used as a measure of damages. On the other hand, a consequence which stands on the plane of reasonable probability, although it is not certain to occur, may be considered in the evaluation of the damage claim against the defendant. In this way, to the extent that men can achieve justice through general rules, a just balance of the warring interests is accomplished. [Citations omitted].

*Cf. Lorenc v. Chemirad Corp.*, 37 *N.J.* 56, 72 (1962) (upholding jury verdict where evidence could have supported a finding that plaintiff would probably develop malignancy due to chemical burns); *Kimble v. Degenring*, 116 *N.J.L.* 602, 604 (Sup.Ct.1936) "( [I]n an action of tort, included in the measure of damages are * * * those prospective damages which can be estimated as reasonably certain to occur."); *Devlin v. Johns–Manville Corp.*, 202 *N.J.Super.* 556, 564–65 (Law Div.1985) (Rejecting damage claim for enhanced risk of cancer where plaintiff cannot satisfy reasonable medical probability standard of proof required to recover for prospective injury).

Although most of the courts that have addressed claims for enhanced-risk damages in toxic-tort cases have applied the general rule requiring proof that the threatened injury be probable, *see infra* at 139–41, commentators on the subject have generally encouraged recognition of an enhanced-risk cause of action in such cases even if the threat of contingent harm is less than probable, or is unquantified. *See* Gale & Goyer, *Recovery for Cancerphobia and Increased Risk of Cancer*, 15 *Cumb.L.Rev.* 723, 741–44 (1985); Seltzer, *Personal Injury Hazardous Waste Litigation: A Proposal for Tort Reform*, 10 *B.C. Envtl. Aff. L. Rev.* 797, 844 (1982–83); Note,

*Increased Risk of Cancer as an Actionable Injury,* 18 *Ga. L. Rev.* 563, 591–92 (1984); Note, *The Inapplicability of Traditional Tort Analysis to Environmental Risks: The Example of Toxic Waste Pollution Victim Compensation,* 35 *Stan. L. Rev.* 575, 618 (1983); Comment, *Increased Risk of Disease from Hazardous Waste: A Proposal for Judicial Relief,* 60 *Wash. L. Rev.* 635, 643–48 (1985). *But see* Reina, *Recovery for Fear of Cancer and Increased Risk of Cancer: Problems with Gideon and a Proposed Solution,* 7 *The Rev. of Litigation* 39 (1987) (advocating non-recognition of cause of action for increased risk of cancer absent proof of medical probability); Note, *An Analysis of the Enhanced Risk Cause of Action,* 33 *Vill. L. Rev.* 437 (1988) (asserting that relaxation of statute of limitations and single-controversy doctrine, combined with allowing recovery for medical surveillance, is preferable to recognition of claim for unquantified enhanced risk of future injury). Generally, advocates of an enhanced-risk cause of action endorse the view that "common-law tort doctrines are ill-suited to the resolution of [toxic-tort] injury claims, and that some form of statutorily-authorized compensation procedure is required if the injuries sustained by victims of chemical contamination are to be fairly redressed." *Ayers, supra,* 106 *N.J.* at 581. Specifically, recognition of an enhanced-risk cause of action is urged primarily to avoid the bar posed by statutes of limitation and the entire-controversy rule, and to afford plaintiffs exposed to toxic chemicals a basis for recovering medical surveillance and emotional distress damages. *See, e.g.,* Comment, *Increased Risk of Disease for Hazardous Waste: A Proposal for Judicial Relief, supra,* 60 *Wash.L.Rev.* at 644–45, 652.

We recently addressed several of the arguments supporting recognition of enhanced-risk claims in *Ayers v. Jackson Township, supra.* With respect to the statute of limitations and the single-controversy doctrine, we held that in toxic-tort cases

neither the single controversy doctrine nor the statute of limitations, *N.J.S.A.* 2A:14–2, will preclude a timely-filed cause of action for damages prompted by the future "discovery" of a disease or injury related to the tortious conduct at

issue in this litigation. The bar of the statute of limitations is avoided because, under New Jersey's discovery rule, the cause of action does not accrue until the victim is aware of the injury or disease and of the facts indicating that a third party is or may be responsible. Moreover, the single controversy rule, intended " 'to avoid the delays and wasteful expense of the multiplicity of litigation which results from the splitting of a controversy,' " cannot sensibly be applied to a toxic-tort claim filed when disease is manifested years after the exposure, merely because the same plaintiff sued previously to recover for property damage or other injuries. In such a case, the rule is literally inapplicable since, as noted, the second cause of action does not accrue until the disease is manifested; hence, it could not have been joined with the earlier claims. [106 N.J. at 583 (citations omitted).]

In *Ayers*, we also explained the significant distinctions between a claim for damages based on enhanced risk of injury and a claim for medical-surveillance damages.

The enhanced risk claim seeks a damage award, not because of any expenditure of funds, but because plaintiffs contend that the unquantified injury to their health and life expectancy should be presently compensable, even though no evidence of disease is manifest. Defendant does not dispute the causal relationship between the plaintiffs' exposure to toxic chemicals and the plaintiffs' increased risk of diseases, but contends that the probability that plaintiffs will actually become ill from their exposure to chemicals is too remote to warrant compensation under principles of tort law.

By contrast, the claim for medical surveillance does not seek compensation for an unquantifiable injury, but rather seeks specific monetary damages measured by the cost of periodic medical examinations. The invasion for which redress is sought is the fact that plaintiffs have been advised to spend money for medical tests, a cost they would not have incurred absent their exposure to toxic chemicals. Defendant contends that the claim for medical surveillance damages cannot be sustained, as a matter of law, if the plaintiffs' enhanced risk of injury is not sufficiently probable to be compensable. In our view, however, recognition of the medical surveillance claim is not necessarily dependent on recognition of the enhanced risk claim. [106 N.J. at 590–91.]

Although we rejected the enhanced-risk claim in *Ayers*, partially on the basis that the action was brought under the New Jersey Tort Claims Act, *N.J.S.A.* 59:1–1 to 12–3, *id.* at 598–99, we upheld the right of plaintiffs with an unquantified enhanced risk of disease due to exposure to toxic chemicals to recover for medical-surveillance expenses:

Accordingly, we hold that the cost of medical surveillance is a compensable item of damages where the proofs demonstrate, through reliable expert testimony predicated upon the significance and extent of exposure to chemicals, the toxicity of the chemicals, the seriousness of the diseases for which individuals

are at risk, the relative increase in the chance of onset of disease in those exposed, and the value of early diagnosis, that such surveillance to monitor the effect of exposure to toxic chemicals is reasonable and necessary. In our view, this holding is thoroughly consistent with our rejection of plaintiffs' claim for damages based on their enhanced risk of injury. That claim seeks damages for the impairment of plaintiffs' health, without proof of its likelihood, extent, or monetary value. In contrast, the medical surveillance claim seeks reimbursement for the specific dollar costs of periodic examinations that are medically necessary notwithstanding the fact that the extent of plaintiffs' impaired health is unquantified. [106 *N.J.* at 606.]

█ Nor is there any question concerning the right of a plaintiff who has sustained physical injury because of exposure to toxic chemicals to recover damages for emotional distress based on a reasonable concern that he or she has an enhanced risk of further disease. *See, e.g., Devlin v. Johns–Manville Corp., supra* 202 *N.J.Super.* at 560–63. The trial court in this case submitted plaintiff's emotional-distress claim to the jury. On appeal, defendants urged that the claim was not cognizable because of a lack of physical symptoms evidencing plaintiff's distress. The Appellate Division upheld the trial court, noting that "[p]roof that emotional distress has resulted in 'substantial bodily injury or sickness' is not required when plaintiff suffers from a present physical disease attributable to defendant's tortious conduct." 225 *N.J.Super.* at 209; *accord Herber v. Johns–Manville Corp.,* 785 *F.*2d 79, 85 (3d Cir.1986) (applying New Jersey law); *Evers v. Dollinger,* 95 *N.J.* 399, 409–11 (1984). Defendants also advanced this issue in their cross-petition for certification, which we denied. *See* 113 *N.J.* 341 (1988). Hence, although we need not and do not reach the question whether exposure to toxic chemicals without physical injury would sustain a claim for emotional-distress damages based on a reasonable fear of future disease, such a damage claim is clearly cognizable where, as here, plaintiff's exposure to asbestos has resulted in physical injury.

Thus, our decisional law has substantially responded to the principal arguments that have been advanced as justifying a departure from the traditional "reasonable probability" standard to permit plaintiffs exposed to toxic chemicals to recover

damages for a possible or unquantified enhanced risk of disease. In New Jersey neither the statute of limitations nor the single-controversy doctrine will bar a toxic-tort plaintiff's timely damage claim instituted after discovery of a causally-related disease. *Ayers, supra,* 106 *N.J.* at 584. Exposure to toxic chemicals may sustain a claim for medical surveillance damages under the criteria set forth in *Ayers, id.* at 606, and if such exposure causes physical injury, a damage claim based on emotional distress may also be cognizable. *Devlin, supra,* 202 *N.J.Super.* at 563.

Based on these developments in our decisional law, defendants asserted at oral argument that plaintiff's claim premised on enhanced risk of disease had been fully adjudicated by submission to the jury of the claims for medical surveillance and emotional distress, contending that there were *no other components* of the enhanced-risk cause of action. Defendants' argument misconceives the essential nature of a claim predicated on enhanced risk of disease. Simply stated, it is a claim for damages based on a prospective injury, conceptually analogous to the claim of a personal-injury plaintiff with a damaged knee to recover damages for the prospective onset of an arthritic condition that may result from the knee injury. *See Jackson v. Johns–Manville Sales Corp.,* 781 *F.*2d 394, 412 (5th Cir.) (describing *General Motors Acceptance Corp. v. Layton,* 353 *So.*2d 749 (Miss.1977)—where plaintiff with bruised knee recovered damages for prospective arthritis—as "indistinguishable" from asbestos plaintiffs' claim for prospective cancer), *cert.* denied, 478 *U.S.* 1022, 106 *S.Ct.* 3339, 92 *L.Ed.*2d 743 (1986). Under our case law, the personal-injury plaintiff conceivably could claim medical-surveillance damages and emotional-distress damages on the basis that the knee injury might cause arthritis, but could not recover damages for the prospective arthritic condition—the "enhanced risk" of arthritis—unless its occurrence was established as a matter of reasonable medical probability. *Coll v. Sherry, supra,* 29 *N.J.* at 174–75. Thus, the fact that Mauro's claims for medical surveillance and emo-

tional distress, attributable to his enhanced risk of cancer, were submitted to the jury does not exhaust his claim for damages based on the prospective occurrence of cancer—the "enhanced risk" of cancer. *Accord Herber v. Johns–Manville Corp., supra,* 785 *F.*2d at 82. The question before us is whether that component of the claim should have been submitted to the jury in the absence of evidence establishing the future occurrence of cancer as a reasonable medical probability. We hold that the prospective-cancer component of plaintiff's enhanced-risk claim was properly withheld from the jury.

We first observe that the decided cases throughout the country that have considered the question, both in the context of asbestos litigation and claims based on exposure to other toxic chemicals, are almost uniform in their conclusion that in order to recover damages, plaintiff must prove that the prospective disease is at least reasonably probable to occur. *See, e.g., Sterling v. Velsicol Chem. Corp.,* 855 *F.*2d 1188, 1204 (6th Cir.1988) (under Tennessee law plaintiff must prove to reasonable medical certainty that anticipated harm will occur); *Hagerty v. L. & L. Marine Servs., Inc.,* 788 *F.*2d 315, 319 (5th Cir.) (affirming dismissal of claim for increased risk of cancer based on exposure to toxic chemicals absent proof that "toxic exposure more probably than not *will* lead to cancer"), modified on other grounds, 797 *F.*2d 256 (5th Cir.1986); *Herber v. Johns–Manville Corp., supra,* 785 *F.*2d at 82 (affirming District Court's exclusion of evidence that plaintiff with asbestos-related injury has significantly increased risk of cancer, based on New Jersey decisions requiring proof of reasonable medical probability that future injury will occur); *Jackson v. Johns–Manville Sales Corp., supra,* 781 *F.*2d at 412–13 (allowing recovery for increased risk of cancer where evidence indicated that plaintiff exposed to asbestos had greater than fifty-percent chance of contracting cancer); *Gideon v. Johns–Manville Sales Corp.,* 761 *F.*2d 1129, 1138 (5th Cir.1985) (affirming jury verdict allowing recovery for enhanced risk of cancer where proof satisfied Texas standard of reasonable medical probability that

prospective injury would occur); *Wilson v. Johns–Manville Sales Corp.*, 684 *F.*2d 111, 119–21 (D.C.Cir.1982) (reversing dismissal on statute of limitations grounds of wrongful-death action brought by widow of employee who contracted asbestosis and died from malignant mesothelioma, holding that cause of action accrued when cancer was or reasonably should have been discovered, and recognizing that cause of action for enhanced risk of cancer under District of Columbia law would have required proof of reasonable medical probability that cancer would occur); *Pollock v. Johns–Manville Sales Corp.*, 686 *F.Supp.* 489, 492 (D.N.J.1988) (granting defendant's motion to strike enhanced-risk claim where plaintiff with asbestos-related injury cannot prove reasonable medical probability that cancer will occur); *Stites v. Sundstrand Heat Transfer, Inc.*, 660 *F.Supp.* 1516, 1523–26 (W.D.Mich.1987) (granting defendant's motion for summary judgment on plaintiff's enhanced-risk claim based on exposure to toxic chemicals due to lack of proof sufficient to satisfy Michigan's requirement of reasonable certainty that future harm will occur); *Anderson v. W.R. Grace & Co.*, 628 *F.Supp.* 1219, 1231–32 (D.Mass.1986) (dismissing before trial claims for damages based on unquantified enhanced risk of future injury absent proof of reasonable probability that prospective harm will occur); *DeStories v. City of Phoenix*, 154 *Ariz.* 604, 744 *P.*2d 705, 707 (Ariz.App.1987) (denying unquantified enhanced-risk claim of worker exposed to asbestos but without physical symptoms or injury); *Eagle–Picher Indus., Inc. v. Cox*, 481 *So.*2d 517, 520 (Fla.App.1985) (declining to recognize claim for unquantified enhanced risk of cancer brought by plaintiff with asbestosis); *Larson v. Johns Manville Sales Corp.*, 427 *Mich.* 301, 399 *N.W.*2d 1, 8–9 (1986) (extending statute of limitations for wrongful-death actions by representatives of employees with asbestosis who died from cancer and acknowledging that under Michigan law claim based on enhanced risk of cancer would have required proof of reasonable certainty that cancer would occur); *Devlin v. Johns–Manville Corp.*, *supra*, 202 *N.J.Super.* at 564–70

(dismissing claim of workers allegedly suffering from asbestosis for unquantified enhanced risk of cancer based on plaintiffs' inability to satisfy New Jersey's standard of reasonable medical probability that disease will occur); *Sorenson v. Raymark Indus., Inc.,* 51 *Wash.App.* 954, 756 *P.*2d 740, 742 (1988) (excluding evidence that asbestosis increases risk of cancer where plaintiff unable to prove reasonable probability that cancer will occur); *cf. Giovanetti v. Johns–Manville Corp.,* 372 *Pa.Super.* 431, 539 *A.*2d 871, 874 (1988) (acknowledging that Pennsylvania law permits proof of *possible* future injury in asbestos litigation because of Pennsylvania rule subjecting all asbestos-related injuries to standard statute of limitations); *Cathcart v. Keene Indus. Insulation,* 342 *Pa.Super.* 123, 471 *A.*2d 493, 500–01 (1984) (acknowledging that under Pennsylvania law statute of limitations for all claims relating to asbestos exposure begins to run when plaintiff knew or should have known of initial injury). *But see Valori v. Johns–Manville Sales Corp.,* No. 82–2686 (D.N.J. Dec. 11, 1985) (1985 *Westlaw* 6074) (allowing admission of evidence that plaintiff suffering from asbestosis had forty-three percent likelihood of contracting lung cancer to prove claim based on enhanced risk of cancer); *Lewitt v. Johns–Manville Sales Corp.,* No. 81–2950, letter op. at 5 (D.N. J. Mar. 11, 1985) (holding admissible statistical evidence of increased risk of cancer among plaintiffs with asbestosis, although less than a reasonable medical probability, to support claim for enhanced risk of cancer); *Gold v. Johns–Manville Sales Corp.,* No. 80–2907, bench op. at 34–37 (D.N.J.1984) (allowing admission of evidence that plaintiff with asbestosis was exposed to forty- to forty-five-percent risk of contracting cancer to support claim for damages based on enhanced risk of cancer).

Although the weight of authority compellingly argues against recognition of an enhanced-risk-of-cancer claim by a plaintiff with an asbestos-related injury absent proof that satisfies the standard of reasonable medical probability, our analysis would be incomplete without consideration of policy arguments

that oppose the general rule. Foremost among these is the concern that deferral of the prospective-injury claim may preclude any recovery when the disease eventually occurs because of the substantial difficulties inherent in attempting to prove causation in toxic-tort cases. *See Ayers, supra,* 106 *N.J.* at 585–87. If the enhanced-risk claim is deferred, a plaintiff asserting the claim when the second injury occurs will inevitably confront the defense that the injury did not result from exposure to toxic chemicals but was "the product of intervening events or causes." *Id.* at 598.

Recognition of a claim for significantly enhanced risk of disease would also enhance the tort-law's capacity to deter the improper use of toxic chemicals and substances, thereby addressing the contention that tort law cannot deter polluters who view the cost of proper use or disposal as exceeding the risk of tort liability. *Id.* at 604.

The rule of reasonable medical probability is also challenged as an artificial, all-or-nothing standard that rejects future-injury claims supported by substantial evidence that barely falls short of the required quantum of proof. This viewpoint was reflected by the District Court's decision in *Gold v. Johns–Manville Sales Corp., supra,* No. 80–2907, bench op. at 36–37, in denying defendant's motion to exclude plaintiff's evidence demonstrating enhanced risk of cancer:

Defendants' fixation on the term "possibility" is too simplistic. Can I really put the terms "reasonable probability" and "greatly increased probability" on a scale and expect to see a decided tip in one direction or the other? The scientific reports indicate a 40 to 45 percent chance of contracting cancer among asbestos workers. It will be for the jury to determine whether the future onset of cancer is probable based on the proofs presented by the plaintiffs and subject to cross-examination by the defendants * * *.

The court in *Gold* appeared to adopt the reasonable-probability standard, but permitted the jury to determine whether the proofs were sufficient to meet it.

Other considerations weigh in favor of limiting recognition of enhanced-risk claims to those that prove to a reasonable medical probability the likelihood of future injury. Those claims

that fail to meet this standard, if presented to juries, would require damage awards for diseases that are prospective, speculative, and less than likely to occur. The more speculative the proof of future disease, the more difficult would be the juries' burden of calculating fair compensation. Inevitably, damage awards would be rendered for diseases that will never occur, exacting a societal cost in the form of higher insurance premiums and higher product costs.

The vast number of asbestos-related claims now pending in state and federal courts throughout the country is a matter of public record. The formidable burden of litigating such claims would be significantly greater if a substantial percentage of these cases also involved disposition of damage claims for the relatively unquantified enhanced risk of future disease.

Equally persuasive to this Court, however, is the availability of a future opportunity to assert such claims if and when the disease occurs, combined with the present availability of medical surveillance and emotional distress damages in appropriate cases. *Supra* at 135–37). In our view, removal of the statute-of-limitations and single-controversy doctrines as a bar to the institution of suit when the disease for which plaintiff is at risk ultimately occurs enhances the quality of the remedy that tort law can provide in such cases. If the disease never occurs, presumably there will be no claim and no recovery. If it does occur, the resultant litigation will involve a tangible claim for present injury, rather than a speculative claim for future injury. Hence, juries will be better able to award damages in an amount that fairly reflects the nature and severity of the plaintiff's injury.

We acknowledge that our resolution of this issue is imperfect. In asbestos cases, for example, the available statistical evidence correlating asbestos-related disease with the future onset of cancer appears to fall short—as was evident from the evidence proffered in this case—of establishing the occurrence of cancer as a matter of reasonable medical probability. *Cf.*

*Devlin v. Johns–Manville Corp., supra,* 202 *N.J.Super.* at 568 (observing that "asbestosis and asbestos related cancer are separate and distinct disease processes."). Undoubtedly, there will be individual cases in which statistical evidence, combined with the particular degree of exposure and injury sustained by the plaintiff, will establish the likelihood of future disease as a matter of probability. *See, e.g., Jackson v. Johns–Manville Sales Corp., supra,* 781 *F.*2d at 413 n. 24; *Gideon v. Johns–Manville Sales Corp., supra,* 761 *F.*2d at 1138. With respect to those cases in which the evidence that future disease will occur falls substantially short of the reasonable-medical-probability standard, we are satisfied that the interests of justice are well served by excluding such claims from jury consideration. Of course, there will be close cases, and for their resolution our use of the reasonable-medical-probability standard "to draw judicial lines beyond which liability will not be extended is fundamentally * * * an instrument of fairness and policy." *Caputzal v. The Lindsay Co.,* 48 *N.J.* 69, 77 (1966). The standard of reasonable medical probability has been applied in New Jersey since at least 1957. *See Budden v. Goldstein, supra,* 43 *N.J.Super.* at 347. The rationale then advanced for the rule bears repetition here:

[A] consequence of an injury which is possible, which may possibly ensue, is a risk which the injured person must bear because the law cannot be administered so as to do reasonably efficient justice if conjecture and speculation are to be used as a measure of damages. On the other hand, a consequence which stands on the plane of reasonable probability, although it is not certain to occur, may be considered in the evaluation of the damage claim against the defendant. In this way, to the extent that men can achieve justice through general rules, a just balance of the warring interests is accomplished. [*Ibid.*]

By adapting the statute-of-limitations and the single-controversy doctrines to the realities of toxic-tort cases, we have ameliorated the potential unfairness of applying the reasonable-probability standard to this type of litigation. Moreover, our case law affords toxic-tort plaintiffs the right to receive full compensation for any provable diminution of bodily health, accommodating all damage claims attributable to present injury and deferring compensation only for disease not yet incurred

and not reasonably probable to occur. Recognition of present claims for medical surveillance and emotional distress realistically addresses significant aspects of the present injuries sustained by toxic-tort plaintiffs, and serves as an added deterrent to polluters and others responsible for the wrongful use of toxic chemicals. In our view, these developments in New Jersey law affecting toxic-tort plaintiffs argue persuasively against modification of the reasonable-probability standard in such cases. We therefore will not disturb the trial court's refusal to submit to the jury plaintiff's damage claim based on his enhanced risk of cancer.

## III.

With respect to the trial court's ruling precluding plaintiff's expert witness from testifying on the basis of statistical and epidemiological studies not contained in his report or in any other discovery material, we affirm the restriction imposed on the expert substantially for the reasons set forth in the opinion of the Appellate Division. 225 *N.J.Super.* at 206–07.

Judgment affirmed.

HANDLER, J., dissenting.

The Court in this case presents an answer, foreshadowed but not expressed, to the question implicit in *Ayers v. Jackson Township*, 106 *N.J.* 557 (1987): whether a jury may consider the enhanced risk of cancer as a separate element of damages against a non-government defendant attributable to the exposure of carcinogens where the plaintiff has sustained a present injury and can prove an increased risk of cancer from statistical evidence. The Court now drops the other shoe. It extends and applies the reasoning of *Ayers* to this case, determining that our current tort law effectively bars all enhanced risk claims. I dissent from the Court's decision.

## I.

On April 22, 1983, Roger Mauro and his wife filed a complaint against several manufacturers of asbestos products for injuries he sustained as a result of inhalation of asbestos fibers during the course of his employment at the Ancora State Psychiatric Hospital from 1964 to the present. From 1964 to the mid-to-late 70s, Mauro used or was exposed to asbestos-containing materials including pipe covering and asbestos cement manufactured by defendants.

In 1981 Mauro found out through a New Jersey Department of Health screening program that although his physical examination and lung function test was "normal," he had bilateral pleural thickening of both chest walls and calcification of the diaphragm. Dr. Gann, Chief of Occupational Medicine of the New Jersey Department of Health informed Mauro of his condition by stating, "Your exposure to asbestos has been significant and there is some evidence that this exposure may have increased your risk of developing lung cancer."

At trial, plaintiff called Dr. James Guidice, a pulmonary specialist, as an expert witness. He diagnosed plaintiff's disease as "pleural asbestosis," evidenced by scarring of the lung lining, pleural plaque formation, and diaphragmatic calcification. The expert testified without substantial contradictions that asbestos exposure can cause cancer particularly of the lungs, larynx, and gastrointestinal tract. According to Dr. Guidice, there was a "probability" that because of Mauro's "asbestos exposure, the risk of cancer, specifically asbestos-related cancer[,] is a major concern," and that "there is a high probability he's at ... increased risk ... for developing cancer." Dr. Guidice stated, however, that he had not quantified either Mauro's increased risk of contracting cancer or the increased risk of asbestos-related cancer in plumbers and steamfitters as an occupational group. Also, he could not state, to a degree of reasonable medical probability, that Mauro would get cancer. He did, however, attempt to refer to statistical and

epidemiological studies indicating a range of twenty- to forty-three percent chance of malignancy due to asbestosis.

At the end of the trial, the trial court refused to submit to the jury Mauro's claim for enhanced risk of developing cancer. The court found that "in New Jersey damages may not be awarded for a future injury which is merely possible but not probable." The Appellate Division affirmed the trial court's ruling that under *Ayers*, unless plaintiff could prove to a reasonable degree of medical certainty that cancer was more probable than not, his claim for increased risk of cancer could not be sustained. 225 *N.J.Super.* 196. This Court now affirms the Appellate Division judgment, finding that plaintiff cannot receive damages for enhanced risk of cancer unless those prospective damages are reasonably probable to occur. The Court does, however, allow plaintiff to sue defendants at some later date when the cancer occurs, despite the entire controversy doctrine and the statutes of limitations.

## II.

The Court refuses to allow any recovery by a plaintiff now suffering from pre-cancerous lung disease for the palpable and demonstrable risk that he or she will incur cancer. The Court purports to follow ancient wisdom, namely, our traditional legal rules that over the years have sufficed to define compensable injury. These conventional rules of damages, expressed more than thirty years ago, *e.g.*, *Budden v. Goldstein*, 43 *N.J.Super.* 340, 346–47 (1957), do not permit the recovery of damages for prospective injury unless it is reasonably probable to occur, *ibid.*; *Coll v. Sherry*, 29 *N.J.* 166, 174–75 (1959). Such a rule has always been considered adequate and just because it generates a greater assurance that the measurement of such damages would not be suffused by undue conjecture and speculation.

However, the Court's invocation of that rule to the difficult question of damages posed by the current case is ritualistic.

The traditional rule, at least considered in the context of this case, can no longer be reconciled with the knowledge and experience that has emerged in recent years. This common knowledge and experience confirms for us that there is a genuine, substantial, and palpable risk that a person with defendant's condition will incur cancer as a result of exposure to asbestos. The Court effectively smothers that understanding when it insists on applying the traditional rule of damages.

I stress what seems truly indisputable—the genuineness, actuality, and gravity of the risk of cancer to one exposed to asbestos over a long period of time and currently manifesting asbestos-related disease. The Court itself acknowledges that this risk is "significant." However, it concludes that it cannot be compensable as an element of damages because this would "represent[ ] a significant departure from traditional, prevailing legal principles." *Ante* at 132.

The Court advances several reasons for refusing to depart from those conventional rules and to deny recovery for plaintiff based on his enhanced-risk claim. First, it finds that most courts that have considered the issue have concluded that plaintiff cannot get damages for the prospective disease unless the disease is reasonably probable to occur. Several federal district court decisions in New Jersey, however, have allowed evidence of enhanced risk of cancer in asbestos litigation. For example, in *Gold v. Johns–Manville*, No. 80–2907, bench op. (D.N.J.1984), Judge Ackerman ruled at a pretrial hearing that the plaintiffs in an asbestos action could submit evidence on the incremental risk of contracting cancer where scientific evidence indicated a forty- to forty-five percent chance of contracting cancer. *Id.* at 35. The court held that because of this evidence, it was improper to take the issue of increased risk, which was "essentially factual," from the jury. The court stated:

> The scientific reports indicate a forty to forty-five percent chance of contracting cancer among asbestos workers. It will be for the jury to determine whether

the future onset of cancer is probable based on the proofs presented by the plaintiffs and subject to cross-examination by the defendants. [*Id.* at 36–37.]

*See also Iaconelli v. Johns–Manville,* No. 82–2685, bench op. (D.N.J. Nov. 12, 1985) (holding that plaintiff's claim for increased risk of cancer was cognizable because plaintiff had a "substantial presently diagnosed physical injury—pleural asbestosis"); *Valori v. Johns–Manville Sales Corp.,* No. 82–2686 (D.N.J. Dec. 11, 1985) (1985 *Westlaw* 6074) (allowing admission of evidence that plaintiff suffering from asbestosis had forty-three percent likelihood of contracting lung cancer to prove claim based on enhanced risk of cancer); *Lewitt v. Johns–Manville Sales Corp.,* No. 81–2950, letter op. at 5 (D.N.J. March 11, 1985) (holding admissible statistical evidence of increased risk of cancer among plaintiffs with asbestosis, although less than a reasonable medical probability, to support claim for enhanced risk of cancer). Thus, although courts have denied enhanced-risk claims, some courts have found that the issue of whether an enhanced risk of cancer deserves damages is a factual inquiry for a jury determination. Moreover, there is growing acknowledgement of the need, grounded in fairness and justice, for allowing a recovery based on such a significant risk of harm. *See, e.g.,* Gale & Goyer, *Recovery for Cancerphobia and Increased Risk of Cancer,* 15 *Cumb.L.Rev.* 723, 741–44 (1985); Seltzer, *Personal Injury Hazardous Waste Litigation: A Proposal for Tort Reform,* 10 *B.C.Envtl.Aff.L.Rev.* 797, 844 (1982–83); Note, *Increased Risk of Cancer as an Actionable Injury,* 18 *Ga.L.Rev.* 563, 591–92 (1984); Note, *The Inapplicability of Traditional Tort Analysis to Environmental Risks: The Example of Toxic Waste Pollution Victim Compensation,* 35 *Stan.L.Rev.* 575, 618 (1983); Comment, *Increased Risk of Disease from Hazardous Waste: A Proposal for Judicial Relief,* 60 *Wash.L.Rev.* 635, 643–48 (1985).

The Court, as noted, also inveighs against the prospect of speculative awards. Enhanced risk claims that do not meet the reasonable medical probability standard, according to the Court, "if presented to juries, would require damage awards for

diseases that are prospective, speculative, and less likely to occur." *Ante* at 142–143). I do not believe, however, that enhanced risk of cancer damages are any more speculative than other damage claims allowed and that they should be denied because they are not easily quantifiable.

> I stress only that if it is just and fair, and it is, to compensate a victim in one case for an unquantified enhanced risk of future disease, it cannot be right to deny recovery in a second case also involving a claim of unquantified enhanced risk. "[T]o deny ... redress for ... injuries merely because damages cannot be measured with precise exactitude would constitute a perversion of fundamental principles of justice." *Berman v. Allan*, 80 *N.J.* 421, 433 (1979) (Handler, J., concurring in part and dissenting in part). "[E]ven where the pitfalls of measuring damages have been genuine, we have not refused to grapple with the complexities in order to recognize the justness and fairness of relief." *Schroeder v. Perkel*, 87 *N.J.* 53, 77 (1981) (Handler, J., concurring in part, dissenting in part). It is the reality of injury presented by evidence, informed by experts, and tested by common sense and ordinary experience, that is the benchmark for damages. "Some of these losses ... might be hard to sense, difficult to define and puzzling to evaluate. They are, nonetheless, actual and constitute a sound basis for a lawful claim for redress and compensation." *Berman v. Allan, supra*, 80 *N.J.* at 446 (Handler, J., concurring in part and dissenting in part). [*Ayers*, 106 *N.J.* at 617 (Handler, J., dissenting).]

Indeed, the Court's solution, which denies any present recovery, nevertheless would allow recovery where plaintiff's claim for increased risk amounts to reasonable medical probability. This suggests, for example, that if a plaintiff has a 51% chance of developing cancer, his or her damage claim would be decided by a jury. This line drawing, however, seems unfair and arbitrary. For example, why should a plaintiff recover for a 51% risk of developing prostate cancer where the normal person's risk may be 30% (a 21% increase due to defendant's conduct) but not an individual who has a 25% risk of skin cancer where the normal person's risk is 1% (a 24% increase due to defendant's conduct)? It would be more fair and just if the jury could weigh the enhanced risk of cancer with the defendant's conduct in causing plaintiff's current condition and then assess the appropriate damages to compensate plaintiff adequately.

The Court also bases its decision on public-policy considerations. First, it finds that there are vast numbers of asbestos-

related claims in courts and that litigating enhanced-risk claims would be "too burdensome." Why? The claim based on the enhanced risk of cancer would be only one element of damages that would be presented with other medical and relevant proofs relating to a plaintiff's injuries and general condition. The Court does not bother to explain how evidence relating to this one element, in addition to admissible proofs relating to plaintiff's current disease and its future consequences, shortened life expectancy, the need for medical surveillance, his or her emotional distress and mental anguish, economic losses, *per quod* claims and the like, all of which are concededly allowable, would unduly complicate or burden this litigation. Nor does the Court explain whether its solution will and can avoid burdening the legal system, if not today, surely tomorrow. The Court proposes to reserve for the future any claims relating to cancer attributable to the current toxic exposure. Such an action brought long after the current actions are concluded will present enormous procedural and administrative obstacles. Many such actions will be undertaken when evidence will have vanished, witnesses will be gone, memories dimmed, and transcripts, needed for purposes of preparation, discovery, examination and cross-examination, and record reconstruction, will have disappeared. The problems that will arise from such future lawsuits do not bode well for the administration of justice.

These considerations also cast deep doubts about the adequacy of the remedy the Court fashions for plaintiffs in this kind of case. The Court magnanimously rules that the statute of limitations and the single controversy doctrine will not bar any lawsuit for cancer damages against this defendant if plaintiff develops an asbestos-related cancer. According to the majority, "[b]y adopting the statute of limitations and the single controversy doctrines to the realities of toxic-tort cases we have ameliorated the potential unfairness of applying the reasonable probability standard to this type of litigation." *Ante* at 144). However, the procedural and administrative obstacles that will encumber such a future lawsuit will not only greatly burden

the administration of justice, they will render plaintiff's remedy so problematic as to be illusory. I do not believe that the Court's solution ameliorates the unfairness to these victims of asbestos exposure. It sweeps their legitimate claims for redress under a judicial carpet.

In my view, the majority's solution of allowing the plaintiff to sue defendant later if he develops cancer is unfair and unjust and does not comport with broader notions of sound public policy. In light of current knowledge and experience, there is no valid reason why plaintiff's enhanced risk of cancer should not be considered an element of a present injury caused by the defendant and to be compensated now. *See Ayers v. Jackson Township, supra,* 106 *N.J.* at 618 (Handler, J., dissenting). Due to this injury, plaintiff may have to alter his lifestyle to avoid cancer-causing agents that may be present in foods or the environment and atmosphere to prevent the likelihood of developing cancer. Plaintiff may also be prevented from obtaining certain jobs—such as in chemical factories—because his enhanced risk of cancer make him more vulnerable to other workplace injuries. In addition, his health and life insurance premiums will be greater because the insurance companies will charge plaintiff for his enhanced risk of developing cancer.

I return to the fairness and feasibility of permitting a current recovery for the present risk of cancer. It seems disingenuous, if not callous, to suggest that plaintiff's risk of cancer is not palpable and serious—why quibble between probable and possible when it is agreed that the risk is significant? When the reality of this risk is confirmed by the fact that plaintiff is now required to submit to bi-annual cancer medical examinations and defendant is more than willing to pay for the cost of this medical surveillance? If the rest of the society treats plaintiff's enhanced risk of cancer as a present injury, why should the courts deny its existence by denying its compensability? Plaintiff does not ask for damages for having cancer, he only wants to recover for the unusual risk to his health and life and the tangible and significant likelihood of developing cancer. He

seeks only fair compensation, which a jury should be quite capable of assessing.

As I stated in *Ayers v. Jackson Township, supra,* 106 *N.J.* at 621:

> The severe limitation of damages imposed by the Court in this case is inadequate and unfair. No person in her right mind would trade places with any one of these plaintiffs. Does this not suggest that a person would have to be paid a considerable sum of money, more than that permitted here by the Court, before tolerating the injuries suffered by these plaintiffs? Why should not a jury be permitted to make this determination?

There is little doubt that defendants clearly prefer the Court's solution to this problem, namely, to allow the plaintiff or his survivors to sue at some date in the indefinite future if and when plaintiff gets cancer. I observed in concurring in *Evers v. Dollinger,* 95 *N.J.* 399, 422 (1984), that a defendant should not be permitted to escape responsibility for negligently increasing a plaintiff's risk of cancer by hiding behind the "statistical uncertainty of the risk."

I think the Court's solution will allow defendants to escape liability in many, if not most, cases. *See Ayers v. Jackson Township, supra,* 106 *N.J.* at 619 (Handler, J., dissenting). Defendants may not ever have to pay the piper. Thus, if plaintiff develops cancer at some later date, then defendants may be liable for damages only if the plaintiff can prove causation. Proof of causation will be a very difficult burden for plaintiff since many genetic and environmental factors may affect or cause the development of cancer. Just because plaintiff can now prove that defendant's conduct caused his pleural thickening and increased his risk of lung cancer, he still may not be able to prove that his lung cancer was caused by defendant's asbestos ten or twenty years after his exposure. In addition, it will be extremely difficult to separate from any award damages previously recovered for such elements attributable to pre-existing disease, pain and suffering, emotional distress, and the like. Therefore, the majority solution of allowing plaintiff to bring a lawsuit against a defendant when the plaintiff develops cancer is one that will invariably be

stacked against claimants rather than negligent defendants. Hence, it is doubtful that the Court's approach will serve the deterrent and corrective purposes of our tort law. *See, e.g., People Express Airlines, Inc. v. Consolidated Rail Corp.,* 100 *N.J.* 246 (1985). In short, I can think of almost no reason why defendants will not rejoice in the Court's proposal.

We should, on balance, encourage plaintiffs to sue in current actions for all elements of a claim for relief consistent with the principles of comprehensiveness, finality, and repose that we invoke in determining and concluding litigation. These principles are reflected in the evolution of the entire controversy doctrine and statutes of limitations. *See,* respectively, *e.g., Cogdell v. Hosp. Center at Orange,* 116 *N.J.* 7 (1989); *Crispin v. Volkswagenwerk, A.G.,* 96 *N.J.* 336 (1984); and *Graves v. Church & Dwight Co., Inc.,* 115 *N.J.* 256 (1989). If a plaintiff were required, or permitted, to sue in a current action for the risk of future cancer, he or she would not have it both ways. Such a plaintiff should be barred from again asserting a claim for the disease even if it becomes manifest. The litigation should be put at rest.

In my opinion, Mr. Mauro, like the plaintiffs from Jackson Township, has a cognizable injury in the form of a palpable and serious risk of incurring cancer that should be compensated for now.

*For affirmance*—Justices CLIFFORD, POLLOCK, O'HERN, GARIBALDI and STEIN—5.

*Dissenting*—Justice HANDLER—1.